**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN**

FREEDOM FROM RELIGION FOUNDATION, INC., DAN BARKER, and ANNIE LAURIE GAYLOR, Co-Presidents of FFRF,

*Plaintiffs,*

v.

DONALD TRUMP, President of the United States; and JOHN KOSKINEN, Commissioner of the Internal Revenue Service,

*Defendants,*

CHARLES MOODIE, KOUA VANG, PATRICK W. MALONE, and HOLY CROSS ANGLICAN CHURCH,

*Proposed Defendant-Intervenors.*

Case No. 3:17-CV-00330

**REPLY IN SUPPORT OF MOTION TO INTERVENE**

This case is about whether the IRS must treat churches and FFRF identically. The answer is no. And contrary to the impression Defendants sought to give this Court in their filings last week, the IRS's *actual* enforcement practices confirm that internal *church* teaching is uniquely protected. Indeed, the day after they filed their brief with this Court saying that the IRS viewed the Johnson Amendment as good law, Defendants told reporters that they are *not* enforcing IRS regulations against churches' speech from the pulpit. FFRF says it wants to end that non-enforcement practice and require that the IRS begin restricting internal church speech. The Churches should be permitted to intervene to protect their speech against restriction.

FFRF does not contest that the Churches can intervene. But Defendants do. While the Churches believe that the IRS's current non-enforcement practices are required by both the Constitution and civil rights law, Defendants are openly hostile to the Churches' rights and refuse to assert or defend them. The chasm between the Churches' and Defendants' position is reflected in their respective motions to dismiss, which could hardly be more different. The Churches are the target of the enforcement campaign FFRF seeks to unleash via its lawsuit, and they are without anyone to defend their rights. Thus, the Churches are entitled to intervene—just as they did the last time the same Plaintiffs asked the same Court for the same relief against the same Defendants. *Freedom From Religion Found. v. Koskinen*, 298 F.R.D. 385 (W.D. Wis. 2014) ("*Koskinen I*").

## ARGUMENT

Defendants make almost no effort to distinguish this case from this Court's rulings granting intervention in *Koskinen I* and *Gaylor*, both of which rejected arguments very similar to those Defendants raise now. Nor do Defendants provide any good reason to either delay or straitjacket the Churches' ability to intervene in this case to protect their own rights.

### I. The Churches are entitled to intervene as of right.

In their opening brief, the Churches explained that they met all four elements to satisfy intervention as of right: (1) their motion to intervene filed within two months of FFRF's Complaint was timely; (2) the Churches have direct, substantial interests in this case—namely, protecting their constitutional and statutory rights to freely provide internal church teaching, avoiding being forced to choose between exercising those rights and risking IRS enforcement proceedings, and advancing defenses against FFRF's claims that would confer tangible benefits on the Churches; (3) their interests may, as a practical matter, be impaired by a ruling in FFRF's favor that would order enforcement of IRS regulations against internal church speech; and (4) the Defendants do

not adequately represent those interests and are, in fact, in conflict with them. Dkt. 6 ("Churches' Br.") at 10 (citing *U.S. v. Thorson*, 219 F.R.D. 623, 626 (W.D. Wis. 2003)). In response, Plaintiffs Freedom From Religion Foundation and its officers ("FFRF") filed no opposition to Intervenors' motion to intervene, and thus concede that the Churches should be allowed to intervene as of right. For their part, the Defendants do not dispute that the Churches' motion was timely. Dkt. 18 ("Opp.") at 7. The Defendants have thus conceded that point as well. Further, the Defendants directly admit the obvious: that the Churches have an "understandable" interest in FFRF's lawsuit, and that they provide a "valuable" and "unique perspective" that is not presented by either FFRF or the Defendants. *Id.* at 1.

The Defendants' remaining arguments fail to rebut the Churches' showing that they have an interest in this lawsuit, that this lawsuit threatens to impair their interests, and that the Defendants do not adequately represent those interests. If anything, the Defendants' arguments demonstrate why intervention is required. The Churches should thus be granted full intervention as of right.

**A. The Churches have an interest in this lawsuit.**

Courts have "embraced a broad definition of the requisite interest" sufficient to justify intervention, *Lake Investors Dev. Grp., Inc. v. Egidi Dev. Grp.*, 715 F.2d 1256, 1259 (7th Cir. 1983), and determine the contours of the interest by reference to "the issues to be resolved by the litigation and whether the potential intervenor has an interest in those issues." *Reich v. ABC/York-Estes Corp.*, 64 F.3d 316, 322 (7th Cir. 1995). Here, FFRF's lawsuit has two aims: invalidating an Executive Order that it alleges prevents the IRS from regulating internal church speech, and requiring the IRS to enforce its political speech regulations against churches. Dkt. 1 ("Compl.") ¶¶ 13-14. The Churches have a concrete interest in (1) opposing FFRF's objectives (2) obtaining a strong interpretation of the Executive Order and (3) preventing a change in the *status quo* that

would require enforcement against churches. In fact, "no group of people face more to lose if plaintiffs succeed than ministers [and churches] such as the proposed intervenors." *Gaylor v. Lew*, No. 16-cv-215, 2017 WL 222550, at *1 (W.D. Wis. Jan. 19, 2017).

Instead of directly responding to this argument, Defendants take an extended detour into Article III standing. Opp. at 9-13. But in the Seventh Circuit, standing is a red herring with respect to Rule 24(a) intervention because the Seventh Circuit has long held that, "from a pragmatic standpoint," "any interest of such magnitude as to support Rule 24(a) intervention of right is sufficient to satisfy the Article III standing requirement as well." *Sokaogon Chippewa Cmty. v. Babbitt*, 214 F.3d 941, 945-46 (7th Cir. 2000) (citation omitted). The Seventh Circuit has been equally clear about the kind of interest that suffices to meet both Article III standing and a Rule 24(a) interest: intervention as of right is allowed "when an original party does not advance a ground that if upheld by the court would confer a tangible benefit on an intervenor who wants to litigate that ground." *City of Chicago v. FEMA*, 660 F.3d 980, 985 (7th Cir. 2011). Indeed, earlier this year, this Court relied on precisely that form of interest in rejecting the IRS's similar argument against intervention in another FFRF case that sought to imperil ministers' rights via the tax code. *Gaylor*, 2017 WL 222550, at *2 (quoting *City of Chicago*, 660 F.3d at 985-86).

So Defendants' jaunt into standing law is unnecessary to the resolution of this motion. The relevant questions are (1) whether the Defendants will certainly advance the grounds that the Churches wish to advance to defeat FFRF's claims, and (2) whether, if upheld by this Court, those grounds would confer a tangible benefit on the Churches. The answers to that inquiry are the same as they were in *Koskinen I*. As before, Defendants "do[] not intend" to advance the Churches' arguments that the Executive Order and the IRS's current practice of non-enforcement are "compelled by the Establishment Clause and other laws." 298 F.R.D. at 387. The Defendants failed

to raise any of the Churches arguments in their motion to dismiss, including the threshold internal-affairs defense that the Churches raised in their own proffered motion to dismiss. And the position the Defendants *did* take in their motion is directly in conflict with the Churches' position—that, far from being bound to leave internal church guidance alone, IRS rules place an "absolute" "restriction" on that guidance, which it may enforce via an "examination of a church's corporate and financial records" after reviewing "all of the facts and circumstances" surrounding any "written or oral statements" made by a church in its internal teaching. Opp. at 3-4.

Likewise, the Churches' arguments would confer a "tangible benefit" on the Churches if they were upheld. 298 F.R.D. at 387; *accord Gaylor*, 2017 WL 222550, *2. The Churches' grounds for rejecting FFRF's twin requests to strike down the Executive Order and commence enforcement against internal church speech are not only "unique," as Defendants admit, but would provide them durable, constitutionally grounded protection against future FFRF lawsuits and IRS enforcement actions. It would also protect them from the IRS's promised investigations into their corporate and financial records. Opp. at 4; *see Tomic v. Catholic Diocese of Peoria*, 442 F.3d 1036, 1038-39 (7th Cir. 2006) (in the sensitive context of internal church affairs, it is "not only the conclusions" that the Court could reach "which may impinge on the rights guaranteed by the Religion Clauses," but also "the very process of inquiry"). And it protects their interest in avoiding the "dilemma" of "risk[ing] prosecution" by engaging in internal church teaching. *Abbott Labs. v. Gardner*, 387 U.S. 136, 152 (1967) (parties have a legal interest in avoiding such dilemmas). Accordingly, as they did in *Koskinen I*, the Churches meet this prong of the intervention analysis.[1]

[1] Defendants suggest that this Court in *Koskinen I* failed to address Article III standing arguments. But Defendants raised the same argument there, and this Court dealt with them in the same way as in *Gaylor*: by reference to the controlling law of the Seventh Circuit on intervention

The Defendants try to avoid this result in two ways. *First*, they say that FFRF's claims "focus exclusively on the Executive Order['s]" meaning and not the IRS's current practice of non-enforcement against churches. Opp. at 7 (arguing that FFRF fails to even "make[] mention" of any other tax law but I.R.C. § 7611). This is incorrect. In addition to challenging the Executive Order, FFRF "*also* requests the Court to order the Defendants to neutrally enforce the restrictions in the Internal Revenue Code § 501(c)(3) against churches . . . , including the electioneering restrictions." Compl. ¶ 14 (emphasis supplied); *id.* at ¶ 90 ("Plaintiffs seek an order mandating that the enforcement policies of § 501(c)(3) by the Defendant Koskinen not preferentially favor churches"); *accord* ¶ 92 (stating that the current non-enforcement practice violates the Establishment and Equal Protection Clauses). Moreover, the entirety of FFRF's concern with the Executive Order is non-enforcement of the IRS's regulations, with over a dozen references to "non-enforcement" against churches. FFRF seeks to change that non-enforcement to rigorous enforcement; the Churches seek to prevent enforcement. Accordingly, the Churches have a legal interest in this lawsuit.

*Second*, even if Defendants were right that this lawsuit is solely about the Executive Order, the Churches would have an interest in intervening to obtain a robust interpretation of the order for purposes of *enforcement*. Defendants argue that the Order does not change the language of current regulations. Dkt. 17 ("Defs.' Mot. to Dismiss") at 12. But Defendants are careful never to say that they enforce current IRS regulations against internal church speech. And when asked by reporters about the position they took before this Court, Department of Justice officials were quoted as

---

analysis. *Koskinen I*, No. 12-cv-818, Dkt. 30 at 3 (intervenors "must" have Art. III standing), *see also Koskinen I*, 298 F.R.D. at 387; *accord Gaylor*, 2017 WL 222550, at *2.

saying that, in fact, the regulations are not "being enforced."[2] That approach to enforcement is consistent with the Churches' reading of the Order, which aligns the IRS's enforcement practices with the requirements of the First Amendment and RFRA. And the Churches' reading is consistent with contemporaneous statements made by the President and the White House.[3] It is also consistent with the factual allegations about non-enforcement in FFRF's Complaint and the Churches' motion to intervene, both of which this Court must take as true at this stage of the case. *See, e.g.*, Compl. ¶ 85 ("the EO's intended result: the non-enforcement of the electioneering restrictions against churches"); *see also Lake Investors*, 715 F.2d at 1259 ("intervention may be denied only if it appears that the intervenor would not be entitled to relief under any set of facts which could be proved in support of the motion"); *Reich*, 64 F.3d at 323 (same). Thus, again, FFRF seeks an order preventing the Executive Order's non-enforcement policy, and the Churches seek to prevent that. Accordingly, the Churches have a significant legal interest in the disposition of this case.

**B. The Churches' interests may, as a practical matter, be threatened by the disposition of this litigation.**

The Churches have likewise met the low bar of showing that, "as a practical matter," their

---

[2] John Solomon, *Groups: Justice court filings defy Trump promises on religious freedom*, The Hill, Aug. 23, 2017, http://thehill.com/homenews/administration/347728-groups-justice-court-filings-defy-trump-promises-on-religious-freedom ("the president isn't enforcing" the IRS regulations against churches).

[3] *See* President Trump's Statements (May 4, 2017), https://www.c-span.org/video/?428059-1/president-trump-signs-religious-liberty-executive-order (under the Johnson Amendment, "if a pastor, priest or imam speaks about issues of public or political importance, they are threatened with the loss of their tax exempt status. A crippling financial punishment, . . . this financial threat against the faith community is over. [In] just a few moments, I will be signing an Executive Order to . . . prevent the Johnson Amendment from interfering with your First Amendment rights"); *see also* White House Press Statement (May 4, 2017), https://www.whitehouse.gov/the-press-office/2017/05/04/press-gaggle-principal-deputy-press-secretary-sarah-sanders (The Executive Order "directs the IRS not to enforce the Johnson Amendment, which it could use to deny or revoke a church's non-profit tax-exempt status.").

ability to protect their interests "may be affected or impaired by the disposition of the action." *United States v. Thorson*, 219 F.R.D. 623, 627 (W.D. Wis. 2003). Indeed, "meet[ing] the impairment prong of Rule 24(a)(2)" is often met simply by showing a sufficient interest in the litigation—which the Churches have done. *Reich*, 64 F.3d at 323.

Defendants' counterargument concedes the point: a "ruling for [Plaintiffs] *would not necessarily* lead proposed intervenors to lose their tax-exempt status or suffer any other concrete harm." Opp. at 9-10 (emphasis supplied). But to say that the Churches' interests "would not necessarily" be harmed is the same as saying that those interests "may be" harmed. And that is all that the Churches have to show here. Thus, the Churches have met this prong.

Defendants separately argue that enforcement is too speculative for the Churches to have a credible fear of it, Opp. at 12. But, once again, Defendants get the standard backwards. Where an applicable law "plainly prohibits" a party's First-Amendment-protected speech, and where—as here—the party intends to violate that law, the burden is on the *government* to show that is has forsworn "the possibility of prosecuting" the party. *ACLU v. Alvarez*, 679 F.3d 583, 592-93 (7th Cir. 2012). Far from "indicat[ing] affirmatively that it will *not* enforce" the law, *id.*, Defendants just did the opposite: they told this Court in detail that their "absolute" restrictions on the Churches' speech are still good law, and that the penalties for violating those restrictions are not only loss of tax-exempt status but also subjecting the Churches to intrusive investigations. Opp. at 3-4. Moreover, the Churches repeatedly allege that they have violated Defendants' restrictions in the past, intend to do so in the future, and currently face a chill on their internal church teaching due to the restrictions. *See, e.g.*, Vang Decl. ¶¶ 18-19, 23-24, 35-36, 42-43; Moodie Decl. ¶¶ 17, 20,

32, 36; Malone Decl. ¶¶ 12-13, 16-17, 32-34, 38.[4] This is "easily sufficient to establish a credible threat of prosecution." *Alvarez*, 679 F.3d at 593.

Even if the question were a close one—and it is not—the subject matter of this case removes all doubt: the whole point of FFRF's lawsuit is to *require* IRS enforcement against churches. That's precisely what the Churches seek to avoid. Which is why the IRS's strange aside that it hasn't engaged in such enforcement in the past only proves the point. FFRF wants to change the status quo and force Defendants to enforce on a prospective basis. At the very least, the Churches' interests "may" be impaired by that outcome. And in reality, they *will* certainly be impaired, since their interest in avoiding having to risk enforcement to exercise their rights will be threatened should FFRF succeed.[5]

---

[4] Defendants claim, Opp. at 11, that the Churches have not been "clear" enough that their internal church teachings violate Defendants' restrictions. That is not true, as noted by the declaration cites above. And any uncertainty on the question must weigh in favor of intervention. *Reich*, 64 F.3d at 323. Defendants' argument on this point is also irrelevant, since the Churches "need not show that the authorities have threatened to prosecute [them]" because "the threat is latent in the existence of the statute." *Alvarez*, 649 F.3d at 591 (citation omitted).

[5] Defendants' invocation of *Susan B. Anthony List v. Driehaus* only hurts them. There, only one of the plaintiffs had previously been the subject of a complaint, and up to eighty complaints per year had been filed in recent years. 134 S. Ct. 2334, 2345 (2014). But here, the President and the IRS admit that up to *ninety-nine* churches have recently been subject to IRS investigations, and FFRF has specifically complained publicly about the speech of two of the proposed intervenors—Father Malone and Holy Cross Anglican Church. *See President Trump Hosts Faith Leaders*, White House (May 4, 2017), https://www.whitehouse.gov/ blog/2017/05/04/president-trump-hosts-faith-leaders-white-house ("In fact, 99 churches have come under IRS scrutiny for practicing their First Amendment right to speak on political issues"); News Release, FFRF, IRS settle suit over church politicking (July 17, 2014), https://ffrf.org/news/news-releases/item/20968-ffrf-irs-settle-suit-over-church-poli-ticking; News Release, FFRF opposes anti-abortion church's intervention (Dec. 17, 2013), https://ffrf.org/news/news-releases/item/19778-ffrf-opposes-anti-abortion-church%E2%80%99s-intervention.

**C. The Defendants do not and cannot represent the Churches' interests in this litigation.**

The burden to satisfy the adequacy-of-representation prong is "minimal." *Richardson v. Helgerson*, No. 15-cv-141, 2015 WL 3397623, at *2 (W.D. Wis. May 26, 2015) (quoting *Lake Investors*, 715 F.2d at 1261). It is enough to show that the Defendants' representation "may be" inadequate. *Id.*; *Thorson*, 219 F.R.D. at 627 (same). And government representation is "frequently" inadequate "when one group of citizens sues the government, challenging the validity of laws or regulations, and the citizens who benefit from those laws or regulations wish to intervene and assert their own, particular interests rather than the general, public good." *Gaylor*, 2017 WL 222550, at *2 (quoting 6 James Wm. Moore et al., *Moore's Federal Practice* § 24.03(4)(a) (3d ed. 2016)).

The Churches demonstrated that Defendants do not adequately represent their interests for three reasons: the Defendants' interests and goals are very different from the Churches', Defendants will not make the same legal and factual arguments as the Churches, and Defendants' interests and arguments are in direct conflict with the Churches'.

Far from rebutting the Churches' arguments, Defendants' opposition confirms them. Their opposition to the Churches' motion to intervene, with its unequivocal reaffirmation of the "absolute" restriction on the Churches' internal teaching and the vague "facts and circumstances" test for investigating the Churches' sermons, could hardly make it clearer that Defendants do not share the Churches' interests and are not willing to make the Churches' arguments. Opp. at 3-4.

Defendants fall back on the fact that they are on the same side of the "v." Opp. at 13 (Defendants "share[] the proposed intervenors' goal of repelling this lawsuit."). But Defendants' and the Churches' goals are both different and conflicting. FFRF is attempting to change enforcement policy, not just the Executive Order, and Defendants do not defend their enforcement

policy, Defs.' Mot. to Dismiss at 7, nor do they share the Churches' position on the Executive Order. *Compare* Churches' Br. at 21 *with* Defs.' Mot. to Dismiss at 12. Further, as the caselaw they cite confirms, that is only relevant where the parties' interests are "identical," "there is no conflict of interest," and the government does not have "substantive interests at variance" with the proposed intervenor's. *Solid Waste Agency of N. Cook Cty. v. U.S. Army Corps of Eng'rs*, 101 F.3d 503, 508 (7th Cir. 1996); *accord Wis. Educ. Ass'n Council v. Walker*, 705 F.3d 640, 659 (7th Cir. 2013) (requiring that the parties have "exactly the same goal" and "no conflict"). And here, Defendants' position is that they are charged by their own regulations to oppose precisely the grounds that the Churches seek to litigate here. Opp. at 3-4. This "conflict of interest" leaves Defendants at "variance" with the Churches' interests and arguments. *Solid Waste Agency*, 101 F.3d at 508. And it also means that Defendants clearly neither have asserted nor will assert several grounds for relief that the Churches wish to raise and have raised. *See City of Chicago*, 660 F.3d at 985; *see also* Dkt. 20 ("Churches' Mot. to Dismiss") at 1 (raising internal-affairs defense). Thus, just as the last time this Court considered this issue, the Defendants "do[] not fully represent the movants' interests." *Koskinen I*, 298 F.R.D. at 387.

Nor can they. It is improper to force the Churches to rely on the government Defendants to defend the Churches' autonomy. The Churches' interest in their autonomy is a personal right to the Churches and a structural limitation on the Defendants' powers. *See* Churches' Br. at 20 (quoting *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 565 U.S. 171, 189 (2012); *Conlon v. InterVarsity Christian Fellowship*, 777 F.3d 829, 836 (6th Cir. 2015)); *accord* Churches' Mot. to Dismiss at 12-13. Requiring the Churches to rely solely on the Defendants to defend this right is like making the hens hire the foxes as their security detail.

* * * * *

FFRF asks this Court to force the Defendants to begin enforcing IRS regulations against internal church teaching and governance. Defendants' only real counter to that request is to attempt to capitulate to it. The Churches are the real parties in interest here, with "unique" interests that "[n]o existing party is particularly motivated to protect, much less adequately represent[.]" *Richardson*, 2015 WL 3397623, at *2; *see also* Opp. at 1 (admitting Churches' "unique" interest). Just as it did before, then, this Court should thus grant intervention as of right. *See Borzych v. Frank*, No. 04-C-643, 2005 WL 1367212, at *7 (W.D. Wis. June 8, 2005) (it is "sound judicial practice" for a court to "give great weight to its own holdings and strive to decide cases in the most consistent and predictable manner possible.").

## II. Alternatively, the Churches satisfy the requirements for permissive intervention.

FFRF has conceded that permissive intervention is appropriate by failing to file an objection. The Defendants' primary argument against permissive intervention is that the Churches have not submitted claims that they could raise against FFRF, but that their defenses are "best viewed" as defenses the government should raise against FFRF. Opp. at 16. But the language of Rule 24(b) allows permissive intervention when the proposed intervenor "has a claim or defense that *shares with the main action a common question of law or fact*." Fed. R. Civ. P. 24(b)(1)(B) (emphasis added). The Churches' claims do share a common question of law and fact with the main action, as explained in Part IA. And courts have regularly considered defenses raised by a single intervenor-defendant against a private plaintiff seeking enforcement from a government party. *See Gaylor v. Lew*, No. 16-cv-215-bbc, 2017 WL 222550, at *3 (W.D. Wis. Jan. 19, 2017) (FFRF challenge to tax benefit raised "substantial interest" for pastors who used that benefit).

Further, the Defendants cite no authority for their assertion, Opp. at 16, that intervenors' defenses must be only between intervenors and plaintiffs. They essentially suggest that where the

proposed intervenor has no claim against the opposing party yet still has a legally protected interest that could be impaired by the suit, the intervenor is categorically barred from permissive intervention. But that leads to the absurd result that the "strongest case" for intervention as of right could never be allowed permissive intervention. *See Solid Waste Agency*, 101 F.3d at 507.

The government cites the Tax Anti-Injunction Act as a bar to permissive intervention, Opp. at 17. But as in *Koskinen I*, the Anti-Injunction Act is not relevant because the Churches are not seeking a declaratory judgment or an injunction against the collection of a tax. Rather, they offer defenses to FFRF's claim. *Koskinen I*, 298 F.R.D. at 387 ("Really what the movants seek is . . . to prevent the Foundation from obtaining relief that would be inconsistent with . . . their later establishing that right."). Thus, the Anti-Injunction Act does not prevent permissive intervention.

**III. The Court should not delay a ruling on intervention.**

Reflecting the weakness of their intervention arguments, Defendants start their brief by asking this Court to delay ruling on intervention until after it rules on subject matter jurisdiction. And they take a maximalist position, arguing that their preferred order is *required* because granting "intervention is *not proper* in a case where a court lacks subject matter jurisdiction." Opp. at 8. But they cite not a single case where a court found that it was somehow improper to decide intervention first. And they make no effort to show that the cases they do cite are similar to this one, where the intervention motion was filed almost two months before the motion to dismiss was.

Contrary to Defendants' position, the reality is that district courts have inherent power to control their dockets, and it is not unusual for courts to decide intervention motions "before the existing parties have joined issue in the pleadings." 7C Charles Alan Wright & Arthur Miller, *Fed. Prac. & Proc. Civ.* § 1916 (3d ed. 2007); *see also* Order granting motion to intervene, *League of Women Voters of Ohio v. Blackwell*, No. 3:05-cv-07309 (N.D. Ohio Nov. 7, 2005), Dkt. 182

(granting motion to intervene before granting motion to dismiss in part, Dkt. 202); Order granting motion to intervene, *Levin v. Miller*, No. 1:11-cv-01264 (S.D. Ind. Sep. 16, 2011), Dkt. 60 (granting motion to intervene before granting motion to dismiss, Dkt. 94). There is no reason the Court should not do so here, which is why this Court rejected a similar delay tactic by Defendants last time around. *Koskinen I*, 298 F.R.D. at 388 (finding that an outstanding legal issue that could defeat FFRF's claims before reaching the Intervenors' defenses "d[id] not mean that the movants cannot intervene now and wait [until] their legal interests require protection.").

Moreover, there is good reason why delay does not make sense here. This Court has rejected Defendants' jurisdictional arguments before, and as noted above, there are serious problems with the renewed arguments it raises here. *Freedom from Religion Found., Inc. v. Shulman*, 961 F. Supp. 2d 947, 953 (W.D. Wis. 2013) (FFRF had standing to challenge lack of enforcement of the Johnson Amendment). If the Court is unpersuaded again, then it should immediately consider the threshold issue that the Churches raised in their proffered motion to dismiss, since that presents the earliest possible juncture to avoid unnecessary interference in internal church affairs. *See* Churches' Mot. to Dismiss at 9. Even if this Court were inclined to accept Defendants' arguments, it should still grant intervention to the Churches, since they meet the standards for intervention and should be permitted to participate in the appeal as full parties and not as amici.

Finally, while the Churches would be prejudiced by delay, the Defendants admit they would not be. Opp. at 8 (admitting that "intervention, if permitted, would not affect the jurisdictional analysis."). Thus, the equities and efficiencies both weigh in favor of granting intervention now.

## IV. The Court should not limit the Churches' participation in the litigation.

In a final alternative argument, the Defendants suggest that intervention be limited to the submission of briefs, which would effectively relegate Intervenors to *amicus curiae* status. But

this argument tries to have it both ways. Even if the Churches can establish Article III standing (as they do in Part I), the Defendants do not want them to be treated as full parties. But if granted intervention of right, the Churches should be permitted to "fully protect" their interests. *Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 382 n.1 (1987) (Brennan, J., concurring in part and concurring in the judgment); *see also Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1651 (2017) (An intervenor with Article III standing may "pursue relief that is different from that which is sought by a party with standing"). The Defendants cite no authority to the contrary. Indeed, five months ago, the Solicitor General argued to the Supreme Court in *Town of Chester* that "intervenors as of right are generally permitted to participate in a case to the same extent as the original parties." Br. for the United States at 23, *Town of Chester*, 137 S. Ct. 1645 (No. 16-605) (citing 7C Charles Alan Wright et al., *supra*, at 609).

Nor will the Churches interfere with the "efficient conduct of the proceedings." Fed. R. Civ. P. 24 advisory committee's note to 1966 amendment. There are only four proposed intervenors, all represented by the same counsel. The Churches will abide by this Court's scheduling orders and seek to help the case proceed as expeditiously as possible. There is no need to preemptively limit intervenors' participation without evidence that they will slow the proceedings. The same principal applies to permissive intervention. This case presents questions of law that can be decided with minimal discovery and motions practice, and the Court need not limit the Churches' participation in those processes before they begin.

**CONCLUSION**

The Churches are the real targets of this lawsuit. They should be permitted to intervene as full parties, just as they were before, and as full parties should not have to either wait or litigate in a diminished, disadvantaged status.

Dated: August 31, 2017

Respectfully submitted,

/s/ Daniel Blomberg

Eric C. Rassbach
Diana M. Verm
Daniel H. Blomberg
The Becket Fund for Religious Liberty
1200 New Hampshire Ave. NW, Suite 700
Washington, DC 20036
Telephone: (202) 955-0095
Facsimile: (202) 955-0090
*Counsel for Proposed Intervenors*